# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8202 | **DATE** | 8/4/2004 |
| **CASE TITLE** | Manzella vs. Village of Bridgeview, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing is set for 9/15/04 at 9:30AM.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter order. Plaintiff's motion to strike defendants' L.R. 56.1 statement of facts [31-1] is denied. Defendants' motion for summary judgment [28-1] is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 0 9 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 38 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 2004 AUG -6 PM 1:27 | date mailed notice | |
| RJ/TL | courtroom deputy's initials | FILED-EDT | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IRENE MANZELLA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 01-C-8202 |
| vs. ) | |
| ) | |
| VILLAGE OF BRIDGEVIEW, et al. ) | |
| ) | Judge Joan B. Gottschall |
| ) | |
| Defendants. ) | |

DOCKETED AUG 0 9 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Irene Manzella ("Manzella") has brought a civil rights claim under 42 U.S.C. § 1983 against the Village of Bridgeview (the "Village"), Bridgeview police officers Kevin Jankist and James Gilman, and Deputy Chief Ken Labuda, alleging that defendants deprived her of her constitutional rights by arresting her without probable cause and subjecting her to excessive force during the arrest. Manzella has also brought a pendant state law claim against Jankist, Gilman and Labuda for Battery. Defendants have moved for summary judgment, arguing that the undisputed facts establish as a matter of law that (1) the arresting officers had probable cause to arrest Manzella, (2) the arresting officers used a reasonable amount of force in executing that arrest, and (3) plaintiff has failed to provide any support for her *Monell* claim against the Village. For the reasons stated below, defendants' motion for summary judgment is granted in part and denied in part.

## BACKGROUND [1]

This action arises out of a domestic dispute between Manzella's son, Nicholas Manzella

---

[1] Manzella has filed a motion to strike defendants' Local Rule 56.1 statement of facts for failure to adhere to the requirements of L.R. 56.1 and the court's standing order on summary judgment. The court finds that Manzella's motion to strike is without merit. Defendants' factual allegations are clear and concise and, in nearly every case, are supported by specific references to the record as required by L.R. 56.1.

("Nicholas"), and his former live-in girlfriend, Sherri Bosi. Within a 24-hour period, Bridgeview police officers responded to three calls for assistance at the couple's apartment at 7026 W. 86th Street in Bridgeview, Illinois. The first call came on April 26, 2001, when Bosi contacted the Bridgeview Police Department to make a domestic violence complaint against Nicholas. Bosi claimed that Nicholas hit her during an argument. Officers responded to the call at the couple's apartment and placed Nicholas under arrest. Later that day, Bosi signed a complaint of battery and filled out the necessary paperwork to obtain an emergency order of protection against Nicholas.

The following morning, on April 27, 2001, the Circuit Court of Cook County conducted a bond hearing on the charges against Nicholas. It is undisputed that Manzella was present at that hearing. At the hearing, the Circuit Court entered a protective order against Nicholas which prohibited him from having any contact with Bosi by any means, including "in person, by phone, mail, email or third party." The court also ordered that Bosi had 48 hours to remove her possessions from the apartment. To comply with that order, Bosi immediately hired movers and returned to the apartment to pack her things.

That afternoon, Nicholas was released on bond and, despite the order of protection, returned to the couple's apartment to retrieve some belongings. When Nicholas arrived, Bosi called police for a second time. At approximately 1:30 that afternoon, defendant Jankist and another officer were dispatched to the apartment to "maintain the peace" between Nicholas and Bosi while Nicholas gathered his possessions. Although Nicholas and Bosi screamed at each other during this encounter, Jankist and his fellow officer were able to keep the couple separated. During this second confrontation, Bosi held the order of protection against Nicholas in her hand and told Jankist that Nicholas was not allowed to be there. Jankist did not read the order because he was focused on protecting the safety of everyone at the residence. Jankist remained at the apartment for at least 30 minutes until Nicholas left with his belongings.

Approximately one hour later, Jankist received yet another call to respond to Bosi's residence. The police dispatcher directed Jankist to respond to a "violation of an order of protection" at the apartment. This time, Bosi called the police because Manzella had arrived at the apartment to confront Bosi about money Bosi allegedly owed Nicholas. Jankist testified that, as he approached the apartment, he heard a lot of "yelling and screaming" coming from inside the apartment building. When Jankist arrived at the unit, he observed Manzella standing in the hallway outside of Bosi's apartment yelling at Bosi "[w]here's my son's money!" He heard Bosi tell Manzella "[g]et out of here. You're not supposed to be here." Jankist described the conversation between Bosi and Manzella as "combative." Bosi told the officers that she had an order of protection and that Manzella was not allowed to be there.[2]

Defendant Gilman arrived at the scene at some point during this discussion and went inside the apartment to speak with Bosi. Bosi handed the order of protection to Gilman and asked him to get Manzella to leave the building. Gilman returned to the hallway and asked Manzella to provide identification. Manzella refused to provide identification and refused the officers' requests that she leave the premises. Jankist warned Manzella that if she did not comply, she would be placed under arrest. Manzella again refused to leave. Finally, the officers advised Manzella that she was under arrest and attempted to handcuff her.

It is undisputed that when Jankist and Gilman attempted to handcuff Manzella she did not cooperate. She brought her arms up to her chest and refused to be handcuffed. Manzella claims that she brought her arms up to her chest to protect a chest bruise that she had suffered in an unrelated incident. The arresting officers asked Manzella to relax her arms but she refused to comply. When Manzella failed to place her hands behind her back, Jankist forced Manzella's hands into position

---

[2] Manzella denies that she had a heated confrontation with Bosi. Manzella claims that (a) the two barely spoke to each other during the visit, (b) Manzella did not raise her voice to Bosi, and (c) Bosi became "frantic" without provocation.

-3-

so that he could apply the handcuffs. Jankist testified that Manzella resisted his efforts and that he used "as little force as possible" to overcome that resistence. Manzella testified, on the other hand, that Jankist used "extreme force" is this maneuver and injured her shoulder. She also claimed that she yelled out that she had an injury and could not be handcuffed behind her back. Bosi testified that, during the arrest, she returned to the doorway of her apartment and heard Bosi yell "Ouch, you are hurting me." Bosi heard Manzella tell the arresting officers that her shoulder hurt and they should handcuff her in front rather than behind her back. Bosi saw a look of pain on Manzella's face and thought that things were "out of control." After successfully handcuffing Manzella, officers led her out of the apartment building. Manzella testified that officers treated her "roughly" as they led her to their patrol car.

Gary Mazur, a friend of Manzella's who had driven Manzella to Bosi's apartment, testified that he was waiting outside of the apartment building when he saw police officers escorting Manzella towards their patrol car. Mazur testified that (a) one of the officers "dragged" Manzella towards the patrol car, (b) Manzella fell on the way to the car and the escorting officer immediately yanked her to her feet, (c) Manzella yelled at the officer "you're hurting me" and "this isn't necessary," and (d) the escorting officer "literally threw [Manzella]" into the patrol car. Defendants dispute Mazur's testimony, claiming that they carefully placed Manzella in the back of the patrol car. Jankist testified that shortly before Manzella was placed in the car, he removed the handcuffs and reapplied the cuffs with Manzella's arms in front of her body.

Defendants claim that defendant Labuda was not present at the scene of Manzella's arrest. Manzella testified that she could not remember whether Labuda was there or not.

After the arrest, Jankist charged Manzella with violation of a protective order. Manzella was transported to Oak Lawn Police Department where she was detained overnight so she could attend a bond hearing the following morning. The court dismissed the charges and Manzella was released.

## ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991). The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.*

### A. Manzella's Claims Against Defendant Gilman

Defendants argue that all claims against defendant Gilman must be dismissed because Gilman was never served with the complaint. Manzella does not respond to defendants' argument or explain why Gilman was not served. In reviewing the case for potential settlement, Magistrate Judge Bobrick recommended to the court that defendant Gilman be dismissed from the case pursuant to Fed.R.Civ.P. 4(m). Manzella has not provided the court with any reason to deviate from that recommendation and the court can think of none. The court, therefore, dismisses all claims against defendant Gilman.

### B. Manzella's Claims Against Defendant Labuda

Manzella has also failed to present to the court any evidence that defendant Labuda was present for or directed Manzella's arrest. Labuda has testified that he was not present during the events at issue and plaintiff has not pointed to any facts to the contrary. Moreover, to the extent Manzella seeks to hold Labuda responsible in a supervisory capacity, her claim is without merit.

There is no *respondeat superior* liability under Section 1983. Rather, Manzella must demonstrate direct responsibility or a concrete causal link "between the misconduct complained of and the official sued" to hold a supervisory official liable. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986). A supervisor's negligence – even gross negligence – in failing to detect and prevent misconduct does not render him liable under Section 1983. He must have acted knowingly, deliberately, or recklessly. *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). Manzella has failed to point to any facts reflecting that Labuda was directly responsible for the alleged misconduct of his fellow officers. Labuda is, therefore, entitled to summary judgment on all of Manzella's claims.

### C. Manzella's False Arrest Claim Against Jankist

Defendants have moved to dismiss Manzella's false arrest claim against Jankist, arguing that the undisputed facts establish that Jankist had probable cause to arrest Manzella for either disorderly conduct, trespassing or disturbing the peace.

"It is well settled that the actual existence of probable cause to arrest precludes a § 1983 suit for false arrest." *Juriss v. McGowan*, 957 F.2d 345, 349 n. 1 (7th Cir.1992). An officer has probable cause to arrest when the totality of the facts and circumstances within his knowledge and of which he has reasonably trustworthy information is sufficient that a prudent person would believe that the suspect committed or was committing an offense. *See United States v. Sawyer*, 224 F.3d 675, 678-79 (7th Cir. 2000). This objective test does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable. The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest and in crediting the complaint of a reasonably believable witness, the police are under no constitutional obligation to exclude all suggestions that the witness is not telling the truth. *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003); *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir.2001). Probable cause need not have existed for the charge for which the suspect was initially arrested so long as it

existed for a closely related charge. *See Biddle v. Martin,* 992 F.2d 673, 676 (7th Cir.1993).

Defendants argue that Jankist had probable cause to arrest Manzella for disorderly conduct. Pursuant to 720 ILCS § 5/26-1(a) "a person commits disorderly conduct when he knowingly... [d]oes any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." The court agrees that Jankist had probable cause to arrest Manzella on that offense. Manzella's arrest did not occur in a vacuum. The domestic dispute between Bosi and Manzella's son required the Bridgeview police to intervene on Bosi's behalf three times within 24 hours. The situation was potentially explosive. In fact, during the second call, Nicholas blatantly ignored the court's protective order and provoked a heated confrontation with Bosi as she was moving out. Less than one hour later, Bosi again called the police for help because Nicholas' mother was interfering with her move. Obviously, Bosi was "alarmed and disturbed" enough by Manzella's visit to call the police. Officers had no reason to question the severity of the situation: Bosi's prior reports of criminal conduct had been credible. Based on the undisputed facts, Jankist had every reason to believe that Manzella was inserting herself into the domestic dispute between her son and Bosi, was continuing a pattern of harassment and was attempting to provoke further confrontation.[3]

Since the arresting officers had probable cause to arrest Manzella, her claim for false arrest is barred.

---

[3] Additionally, Jankist had probable cause to arrest Manzella for aiding and abetting a violation of the protective order. Under Illinois law, it is a crime to intentionally aid in the violation of a domestic order of protection. *See Wood v. Wood,* 672 N.E.2d 385, 389-90 (Ill. App. 1996) ("For purposes of issuing and enforcing orders of protection, article 5 of the Criminal Code of 1961 applies"). Under Article 5 of the Illinois Criminal Code, a person is accountable for the conduct of another when, "with the intent to promote or facilitate such commission," she aids in the commission of the offense. 720 ILCS § 5/5-2(c). The court finds that based on (1) Bosi's complaint that Manzella's presence was in violation of the protective order, and (2) the timing of the incident, a reasonable police officer could believe that Manzella was knowingly assisting her son in avoiding the prohibitions of the protective order. The fact that the protective order did not expressly limit Manzella's activities is immaterial.

D.  **Manzella's Excessive Force Claim Against Jankist.**

Defendants have also moved to dismiss Manzella's excessive force claim, arguing that, taking Manzella's resistence into account, the undisputed facts demonstrate that the officers used a constitutionally permissible amount of force when they arrested her.

Officers have the undoubted authority to employ sufficient force to take an offender into custody. *Graham v. Connor*, 490 U.S. 386 (1989) ("the right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"); 720 ILCS § 5/7-5 ("[An officer] is justified in the use of any force which he reasonably believes to be necessary to effect the arrest ...."). However, officers' use of force must be objectively reasonable under the circumstances. *Graham*, 490 U.S. at 396. In determining whether a reasonable amount of force was used courts must consider (a) the severity of the crime at issue, (b) whether the suspect posed an immediate threat to the safety of the officers or others and (c) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. In a situation where an offender is resisting arrest, an officer can use that amount of force necessary to overcome the offender's resistance. *See Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592-93 (7th Cir.1997).

The facts of this case do not allow the court to rule as a matter of law as to whether Jankist's use of force was reasonable under the circumstances. Jankist testified that (1) he used "as little force as possible" to overcome Manzella's resistence, (2) the handcuffing procedure only took a few seconds, (3) he removed the handcuffs and reapplied them to Manzella's front before placing her in the squad car, (4) he carefully sat Manzella in the squad car, and (5) Manzella did not inform the arresting officers that she was injured. However, Manzella and Mazur dispute those facts, testifying that Manzella was subjected to rough treatment both as she was handcuffed and as she was led to the patrol car.

Defendants ask the court to discount Mazur's testimony because it is inconsistent with

Manzella's account of the arrest. However, it is not for the court to weigh the credibility of plaintiff's witnesses. Summary judgment on Manzella's excessive force claim against Jankist is, therefore, inappropriate.

E.   **Manzella's *Monell* Claim Against the Village of Bridgeview**

Manzella claims that, pursuant to *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978), the Village is liable for Jankist's unconstitutional conduct because it failed to train its officers regarding the use of force against elderly offenders.[4] Defendants argue that they are entitled to summary judgment on Manzella's *Monell* claim because she has not pointed to any facts that demonstrate that the training of the arresting officers was constitutionally deficient.

"An allegation of failure to train is available only in limited circumstances." *Cornfield v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993). A municipality can be held liable under a Section 1983 "failure to train" theory only if plaintiff proves (1) that the deficient training program caused plaintiff's injury and (2) the failure to train amounts to "deliberate indifference" to the rights of persons with whom the police come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by [Supreme Court precedent] – can a city be liable for such failure under § 1983." *Id.* at 389. "Deliberate indifference" may be shown in one of two ways: a municipality displays deliberate indifference if it (a) fails to train officers to handle a recurring situation that presents an obvious potential for a constitutional violation, or (b) fails to provide further training after learning of a pattern of unconstitutional violations by its officers. *Dunn v. City of Elgin*, 347 F.3d 641, 646 (7th Cir. 2003).

---

[4] Obviously, to the extent that Manzella's *Monell* claim is based on her allegations of false arrest, that claim must be dismissed since there is no valid underlying false arrest claim against the arresting officers (Section C above).

-9-

Manzella's failure to train claim against the Village must fail because she has not pointed to any facts demonstrating that the training given Jankist and other Bridgeview officers was constitutionally infirm.[5] Manzella's claim, essentially, is that, because the Village did not have a special policy regarding the use of force against elderly suspects, the training of its officers was necessarily deficient. However, the Seventh Circuit has expressly held that such arguments are insufficient to support a *Monell* claim because they "ignore the training the officers did receive" from other sources, including the police academy. *See Palmquist v. Selvik*, 111 F.3d 1332, 1345 (7th Cir. 1997). Here, Manzella has not pointed to any facts regarding the actual training Jankist and other officers received – either at the police academy or from the Village – in the application of force during an arrest. Consequently, there is no evidence that would allow a jury to find that Jankist's training was constitutionally deficient or that the Village's failure to provide additional special training caused Manzella's injury. *See id.*

Since Manzella has not pointed to any facts that would allow a jury to find in her favor, the Village is entitled to summary judgment on Manzella's *Monell* claim.

---

[5] Manzella did not include any facts on her *Monell* claim in her L.R. 56.1 Statement of Additional Facts. The sole factual allegations even remotely related to that claim appear only in her response memorandum. However, L.R. 56.1(b)(3)(B) "provides the only acceptable means of ... presenting additional facts" to the court. *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir.1995). Simply providing additional allegations in one's response memorandum is insufficient to put those facts before the Court. *Id.*; *Dimmitt & Owens Fin., Inc. v. Superior Sports Prods., Inc.*, 196 F.Supp.2d 731, 737 (N.D.Ill.2002); *Malec v. Sanford*, 191 F.R.D. 581, 582-84 (N.D. Ill. 2000).

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. Manzella's false arrest claim, Manzella's claims against defendants Gilman and Labuda, and Manzella's *Monell* claim against the Village of Bridgeview are dismissed.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: August 4, 2004